UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLEGRO SOFTWARE DEVELOPMENT CO., <br><br> Plaintiff, <br><br> v. <br><br> A10 NETWORKS, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 1:12-cv-11636-WGY <br> ) <br> ) **Leave to File Granted on April 30, 2013** <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT A10 NETWORKS, INC.'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

It is obvious from the manner in which Allegro has pursued its dispute with A10 that there exists some defect in Plaintiff's ability to bring a copyright claim regarding the software at issue in this case.[1] Accordingly, it has attempted to make an end-run around the Copyright Act by recasting its objections to A10's use of the software as claims under other theories of tort, despite the fact that its pleadings fail to assert anything substantively different than use of the software in a manner that Allegro claims is outside the scope of a license. *See* 6 Patry on Copyright § 18:17 (2013) ("I can say with experience that there is no limit to … willingness to distort the true nature of [a] claim asserted in a Rube-Goldberg effort to avoid preemption."). A10 files this brief reply in order to respond to new arguments presented in Allegro's response and the dangers of those arguments.

---

[1] Allegro notes that its initial letters to A10 threatening a copyright claim (Compl. Exs. D, E) do not "purport to lay out all the applicable causes of action available to it." *See* Opposition to Motion for Partial Judgment on the Pleadings at 12 n.5 [Dkt. # 33] [Hereinafter "Opposition to Motion"]. The question is, of course, not one of what claims Allegro would like to pursue, but rather which that it can; affixing a different label to what is obviously a copyright allegation does not avoid preemption. *See Rubin v. Brooks/Cole Publ'g Co.*, 836 F. Supp. 909, 923 (D. Mass. 1993).

I.      **Plaintiff's Invocation of the Legislative History of Section 301 Disregards Later Changes to the Section before Passage and the Case-Specific Nature of the Preemption Inquiry.**

Allegro cites three different pieces of legislative history in order to avoid the letter of Section 301, all of which are immaterial and two of which are irrelevant.[2]

Allegro's only authority that addresses Section 301 directly is a House Report analyzing the 1976 Copyright Act as it stood on September 3, 1976. *See* H.R. Rep. No. 1476, 94th Cong., 2d Sess. 132, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5748.  Allegro fails to mention, however, that three weeks after that report Congress eliminated express exceptions for trade secrets and other specific state causes of action from the scope of Section 301 preemption. H.R. Conf. Rep. 94-1733, 94th Cong., 2d Sess. 79, *reprinted in* 1976 U.S.C.C.A.N. 5809, 5820.  The enacted legislation has no categorical exception from preemption; any claim that is "equivalent in substance to a federal copyright infringement claim" is subject to preemption, regardless of what label is affixed. *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1164 (1st Cir. 1994).  As such, "[t]he legislative history of § 301 gives no direct guidance as to the contours of preemption." *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1534 (S.D.N.Y. 1985); *see also Tegg Corp. v. Beckstrom Elec. Co.*, 650 F. Supp. 2d 413, 421 (W.D. Pa. 2008) ("[D]espite this legislative history, federal courts must still grapple with whether a particular cause of action is preempted because any direct reference to specific actions was deleted from the main bill."); *Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 440-41 & n. 10

---

[2] Allegro seems to suggest that one can learn the proper nature and scope of Section 301 of the Copyright Act through the legislative history of a 1980 amendment to the Act that made no change to Section 301, *see* Pub. L. No. 96-517, § 10, 94 Stat. 3015 (amending §§ 101 and 117 of the Act, and making no other revisions to copyright law), and the legislative history around the *sui generis* protection Congress affords to semiconductor chips outside of copyright altogether, *cf. Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1563 (Fed. Cir. 1992) (noting the unique position of semiconductor chip regulation). Legislative history that addresses neither the creation nor amendment of Section 301 is not indicative of the legislative intent of a different Congress.

(S.D.N.Y. 1996) (declining to rely upon § 301's "puzzling and unreliable" legislative history: "The Copyright Act's preemption provision brings to mind 'the canon of construction of the wag who said, when the legislative history is doubtful, go to the statute.'" (*quoting Greenwood v. United States*, 350 U.S. 366, 374 (1956)).

There is no categorical exception to the federal bar against state claims substantively similar to copyright. "Indeed, one of the most common mistakes [in the area of copyright preemption] is the assumption that a state law cause of action – for example, unfair competition or trade secret violation – is the same in each state and under all facts, and that therefore a general rule regarding whether all claims of unfair competition or trade secrets are preempted is possible." 6 Patry on Copyright § 18:16. This Court has made clear that "not every trade secrets claim will survive preemption," *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 107 (D. Mass. 2001), and for the reasons stated A10's motion, Allegro has not pleaded any facts that would make its trade secrets claims other than what they are: a copyright claim with a different label, based entirely on a dispute over the scope of a copyright license.

## II. Allegro Cannot Evade Preemption of Tort Claims through Reliance on Mere Allegations of Breach of Contract and Matters Beyond the Pleadings.

As noted in A10's motion, courts have repeatedly stated that claims alleging no use of improper means in acquisition or disclosure of a trade secret are preempted.[3] Memorandum in Support of Motion at 6-7. Allegro argues, however, that preemption is avoided whenever a party breaches "an express or implied confidentiality agreement," Opposition to Motion at 6. Allegro's statement of the law is materially incomplete.

---

[3] A10 relies on its prior brief on the issue of preemption of the Chapter 93A claim. In trying to dispute the obvious preemption of this claim, Allegro is only able to claim "us[e] of Allegro's software without license," an obvious copyright claim; "failing to report unauthorized uses of Allegro's software," which given that the heart of this dispute is whether this was authorized or not is entirely circular; and "failing to respond to Allegro's inquiries regarding A10's unlawful conduct," which would allow for a separate 93A claim every time a copyright dispute involves an unanswered email.

3

The First Circuit and this Court have repeatedly emphasized and demonstrated that it is "us[ing] improper means, in breach of a confidential relationship, to acquire and use [a] trade secret" that adds the extra element, *Data Gen.*, 36 F.3d at 1165, not mere breach of an agreement that includes a confidentiality provision. In both *Data General* and *Tingley*, the defendants had induced others to disclose trade secrets they could not obtain lawfully. *Data Gen.*, 36 F.3d at 1165; *Tingley Sys.,* 152 F. Supp. 2d at 106-07. In *RBM Techs, Inc. v. Lash*, No. 04–10062, 2004 WL 1809867, at *1-2 (D. Mass. Aug. 13, 2004), it was the alleged use of information obtained through the scope of employment that supplied the additional element. In *Blake v. Prof'l Coin Grading Servs.*, No. 11-11531, 2012 WL 4903334, at *4 (D. Mass. Oct. 16, 2012), it was the alleged disclosure of the confidential information was the basis of the action.

Even Allegro appears uncomfortable with the scope of its argument. In an attempt to fit its claim within the cases above, Allegro now attempts to twist its allegations of breach into a "promis[e] to use Allegro's trade secrets for a limited purpose thereby inducing Allegro to disclose its trade secrets." Memorandum in Opposition at 7 n.3. This circular attempt to transform an alleged breach of contract into some form of *a priori* fraudulent inducement is presented without any basis (and indeed, there is no basis for that accusation). More importantly, there is no allegation of such inducement in Allegro's pleadings. Similarly, Allegro now attempts to use a discovery response as evidence of disclosure of trade secrets to third parties, Opposition to Motion at 6, despite the total absence of any such allegations in the pleadings. This is an incorrect portrayal of the interrogatory response at issue, but more importantly, such evidence lies outside the scope of the pleadings and therefore should be rejected in considering this motion. *In re PLC Sys., Inc. Sec. Litig.*, 41 F. Supp. 2d 106, 118 (D. Mass. 1999).

Allegro's allegation that A10 breached the "confidentiality" section of the parties' agreement is a classic "threadbare recital[] of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When Allegro comes to allege facts substantiating that legal conclusion, Allegro states in the barest of terms that that A10 "integrates" and "use[s]" Allegro's purported trade secret source code beyond the scope of its valid license. Compl. ¶¶ 28, 32. Its new and unfounded attempt to transform those allegations into something more are without merit.

### III. Adopting Allegro's Broad Argument Would Supplant the Careful Balances of Copyright with Trade Secret Law in Software Licensing

In addition to being without foundation, Allegro's argument that a trade secrets claim survives preemption whenever a confidentiality clause addresses use beyond the scope of a license would have significant consequences, effectively removing copyright from the domain of software licenses. Future parties could simply include cursory confidentiality language in their licenses to avoid the significant hurdles and limitations of a copyright claim, and pursue a trade secret claim upon breach to achieve substantially the same remedy.

This is clearly not the intent of Congress, and would damage the careful balancing of public and private interests in copyright cases. "The purpose of [copyright's] broad statutory pre-emption scheme is to further the Copyright Act's goal of encouraging contributions to recorded knowledge by precluding the use of state law to prevent the copying of material that Congress has determined should be left in the public domain." *Peckarsky v. ABC, Inc.*, 603 F. Supp. 688, 695 (D.D.C. 1984). Congress and the courts have sought to ensure that the same careful balancing that applies in all of copyright law applies in software as well, but no such balancing is present in the realm of trade secret law. If copyright could be supplanted so easily by state tort regimes, the First Circuit would not have spent so much time carefully considering

5

the proper scope of protection for a piece of software against copycats, *see Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 819-20 (Boudin, J., concurring) (discussing the history of courts delineating the scope of copyright protection and its application to software), other circuit courts would not have pained to determine the proper scope of protection against competitive uses of software, *see generally Assessment Techs. of Wisc., LLC v. WIREdata, Inc.*, 350 F.3d 640 (7th Cir. 2003) (copying software to access underlying data); *Sega Enters., Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992) (use of software to gain understanding of functional elements), and Congress would not have gone to the trouble of laying out precisely what uses of software would be protected from infringement claims, *see* 17 U.S.C. § 117.

There is no basis, and no need, to open this door to an alternative tort regime for software derivative works, and Allegro's invitation to do so should be rejected by this Court.

**Conclusion**

The dismissal of Counts II, III and IV will allow this Court to focus on the real dispute (i.e., whether A10 complied with the Agreement) and will shorten the case by avoiding protracted discovery and extensive motion practice on issues that should not be before the Court. For the reasons discussed above and those set forth in A10's motion, A10 respectfully requests that this Court grant judgment on the pleadings as requested in the motion.

Respectfully submitted,

**A10 NETWORKS, INC.**,


*/s/ Michael S. Batson*
Peter G. Hermes, BBO No. 231840
phermes@hermesnetburn.com
Michael S. Batson, BBO No. 648151
mbatson@hermesnetburn.com
Thomas J. Basile, BBO No. 675427
tbasile@hermesnetburn.com
HERMES, NETBURN, O'CONNOR
    & SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA  02110-3113
Tel:  (617) 728-0050
Fax:  (617) 728-0052

Dated:  April 30, 2013

**CERTIFICATE OF SERVICE**

Pursuant to Local Rules 5.2(b)(2) and 5.4 of the Local Rules of the United States District Court for the District of Massachusetts, I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent by first-class mail to those indicated as non-registered participants, if any, on April 30, 2013.


*/s/ Michael S. Batson*
Michael S. Batson

G:\DOCS\JLN\CLIENTS\A10\A10 Reply re 12(c) Motion 4.30.13.docx